UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA FREITAG, Court-appointed permanent receiver for ANI Development, LLC; American National Investments, Inc.; and their subsidiaries and affiliates,<br><br>    Plaintiff,<br><br>v.<br><br>KIM H. PETERSON, individually and as Trustee of the Peterson Family Trust dated April 14, 1992, and as Trustee of the Peterson Family Trust dated September 29, 1983; KIM FUNDING, LLC, a California limited liability company; ABC FUNDING STRATEGIES, LLC, a Delaware limited liability company; ABC FUNDING STRATEGIES MANAGEMENT, LLC, a Delaware limited liability company; ANI LICENSE FUND, LLC, a California limited liability company; KIM MEDIA, LLC, a California limited liability company; KIM MANAGEMENT, INC., a California corporation; KIM AVIATION, LLC, a California limited liability company; AERO DRIVE, LLC, a California limited liability company; | Case No.: 21-CV-1620 TWR (AHG)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART WITHOUT PREJUDICE THE RECEIVER'S MOTION FOR SUMMARY JUDGMENT; AND**<br>**(2) PERMITTING SUPPLEMENTAL BRIEFING REGARDING**<br>**(a) THE RECEIVER'S FIRST CAUSE OF ACTION, AND**<br>**(b) THE RECEIVER'S REQUESTS FOR ATTORNEYS' FEES**<br><br>(ECF No. 67) |

|   |   |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | AERO DRIVE THREE, LLC, a California limited liability company; BALTIMORE DRIVE, LLC, a California limited liability company; GEORGE PALMER CORPORATION, a Nevada corporation; KIM FUNDING LLC DEFINED BENEFIT PENSION PLAN; and DOES 1 through 10, inclusive,<br><br>                                   Defendants. |

Presently before the Court is the Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Mot.," ECF No. 67) filed by Plaintiff Krista Freitag, the Court-appointed permanent receiver for ANI Development, LLC; American National Investments, Inc.; and their subsidiaries and affiliates (the "Receivership Entities" or "Entities"), as well as the Opposition ("Opp'n," ECF No. 73) filed by Defendants Kim H. Peterson, individually and as trustee of the Peterson Family Trust dated April 14, 1992 (the "1992 Trust"), and as trustee of the Peterson Family Trust dated September 29, 1983 (the "1983 Trust"); Kim Funding, LLC ("Kim Funding"); ABC Funding Strategies, LLC ("ABC Funding"); ABC Funding Strategies Management, LLC ("ABC Management"); ANI License Fund, LLC ("ANI License"); Kim Media, LLC ("Kim Media"); Kim Management, Inc. ("Kim Management"); Aero Drive, LLC ("Aero Drive"); Aero Drive Three, LLC ("Aero Drive Three"); Baltimore Drive, LLC ("Baltimore Drive"); George Palmer Corporation ("George Palmer Corp."); and Kim Funding LLC Defined Benefit Pension Plan ("KF Pension Plan") and Plaintiff's Reply (ECF No. 74). The Court held a hearing on November 7, 2024. (*See* ECF No. 86; *see also* ECF No. 87 ("Tr.").) Upon careful consideration of the Parties' arguments, the record, and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE** the Receiver's Motion, as follows, and **PERMITS** the Parties to submit supplemental briefing, as detailed below.

/ / /

/ / /

## BACKGROUND[1]

The Parties are familiar with the facts underlying this action and have agreed to a comprehensive set of 203 undisputed material facts, (*see* ECF No. 67-7 ("Jt. Stmt.") J-1–203), as well as 21 additional facts proposed by the Receiver to which Defendants did not object, (*see id.* P-1, P-2, P-4–18, P-20–23), all of which the Court incorporates by reference herein in their entirety.[2]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment as to a claim or defense or part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although materiality is determined by substantive law, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting Fed. R. Civ. P. 56(c) (1963)).

---

[1] Because the Court does not rely on any of the Receiver's proposed facts to which Defendants objected, the Court **OVERRULES AS MOOT WITHOUT PREJUDICE** their evidentiary objections. (*See* ECF No. 73-3.)

[2] If not specifically defined in this Order, capitalized terms shall have the same meanings as those assigned by the Parties in their Joint Statement, (*see* Jt. Stmt. ¶¶ 1–58), and/or briefs.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e) (1963)); *see also Anderson*, 477 U.S. at 248. Accordingly, the non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

## ANALYSIS

Through the instant Motions, the Receiver seeks summary adjudication in her favor as to her first cause of action against all Defendants jointly for avoidance and recovery of fraudulent transfers in violation of California's Uniform Voidable Transactions Act ("CUVTA"), Cal. Civ. Code §§ 3439–3439.14, in the amount of $6,120,570.35, plus prejudgment interest; seventh cause of action against ANI License for breach of contract (promissory note) in the amount of $9,706,387.77; and eighth cause of action against Defendant Peterson, as trustee of the 1992 Trust, for breach of contract (guaranty) in the amount of $6,582,886.94. (*See* Mot. at 2–3; Reply at 12; *see also generally* ECF No. 67-1 ("Mem.").)

/ / /

/ / /

## I. Fraudulent Transfer

The Receiver's first cause of action seeks to recover from all Defendants the amounts they received in excess of amounts they transferred to Chicago Title escrow accounts, their investors, and the Receivership Entities. (*See* SAC ¶¶ 151–57; *see also id.* ¶ 144.) The Court does not write on a clean slate—the SEC Action has been pending for five years, and there have been a multitude of related clawback actions. As is most relevant to the instant Motion, Judge Burns granted the Receiver's motion for summary judgment and denied the cross-motion filed by defendant Horacio Valeiras, trustee of the Valeiras Family Trust Dated July 20, 2007 (the "Trust"), in *Freitag v. Valeiras*, No. 21-CV-1625-LAB-AHG, 2024 WL 1355146 (S.D. Cal. Mar. 29, 2024), awarding the Receiver the defendant's $468,041.03 "profit" from the ANI Loan Program plus prejudgment interest as an actual fraudulent transfer under CUVTA. As Judge Burns explained in *Valeiras*:

> The CUVTA states in relevant part:
>
> (a) A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor.
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
>
> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
>
> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur,

5

21-CV-1620 TWR (AHG)

> debts beyond the debtor's ability to pay as they
> became due.

Cal. Civ. Code § 3439.04(a). "Courts have routinely applied [CUVTA] to allow receivers or trustees in bankruptcy to recover monies lost by Ponzi-scheme investors." *Donell v. Kowell*, 533 F.3d 762, 767 (9th Cir. 2008) (citing *In re Agric. Rsch. & Tech. Grp., Inc.*, 916 F.2d 528, 534 (9th Cir. 1990) and *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995)). Because "California's fraudulent transfer act and the federal bankruptcy code's fraudulent transfer provisions are almost identical in form and substance," courts may look to decisions interpreting both in reaching its conclusion. *Id.* at 769–70 (citing *In re AFI Holding, Inc.*, 525 F.3d 700, 703 (9th Cir. 2008)).

In a Ponzi scheme, the operator "is the 'debtor,' and each investor is a 'creditor.'" *Id.* at 767 (citing *Lehmann*, 56 F.3d at 755). "The profiting investors are the recipients of the Ponzi scheme operator's fraudulent transfer." *Id.* Generally, if "innocent investors [] received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers." *Id.* at 770. According to the Ninth Circuit:

> The policy justification is ratable distribution of remaining assets among all the defrauded investors. The "winners" in the Ponzi scheme, even if innocent of any fraud themselves, should not be permitted to "enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky."

*Id.* (quoting *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991)).

A receiver may seek to recover on two theories of liability because a transfer can be either "actual fraud" or "constructive fraud" under the CUVTA. *Id.* The Ninth Circuit described these two theories:

> Under § 3439.04(a)(1), codifying the "actual fraud" theory, the receiver alleges that the debtor (Ponzi scheme operator) made transfers to the transferee (the winning investor) "[w]ith actual intent to hinder, delay, or defraud" the creditors (the losing investors). "[T]he mere existence of a Ponzi scheme is sufficient to establish actual intent" to defraud. *In re AFI Holding, Inc.*, 525 F.3d at 704 (internal quotation marks omitted); *Agritech*, 916 F.2d at 535. Under § 3439.04(a)(2), codifying the "constructive fraud" theory, the receiver alleges that the transfer of "profits" to

the winning investor was made "[w]ithout receiving a reasonably equivalent value in exchange for the transfer," because profits gained through theft from later investors are not a reasonably equivalent exchange for the winning investor's initial investment. *See Scholes*, 56 F.3d at 757. Proof that transfers were made pursuant to a Ponzi scheme generally establishes that the scheme operator "[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," § 3439.04(a)(2)(A), or "[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due," § 3439.04(a)(2)(B).

*Id.* (alterations in original). Here, although the Receiver alleges recovery of fraudulent transfers on either actual or constructive fraud, (Dkt. 32 at 2), it doesn't matter because recovery under either fraud theory doesn't impact the amount recovered from innocent investors, *Donell*, 533 F.3d at 771.

Admissions, through a guilty plea, that one operated a Ponzi scheme conclusively establishes actual intent under the CUVTA. *In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008) (collecting cases) ("[A] debtor's admission, through guilty pleas and a plea agreement admissible under the Federal Rules of Evidence, that he operated a Ponzi scheme with the actual intent to defraud his creditors conclusively establishes the debtor's fraudulent intent under [] California Civil Code § 3439.04(a)(1), and precludes relitigation of that issue."). Additionally, a factor in determining actual intent under the CUVTA is "[w]hether the transfer or obligation was to an insider." Cal. Civ. Code § 3439.04(b)(1).

*Valeiras*, 2024 WL 1355146 at *7–8.

Through the instant Motion, the Receiver seeks to recover "**$8,043,621.78** (representing $6,120,570.35 in funds fraudulently transferred to Defendants and $1,923,051.43 in prejudgment interest)."[3] (*See* Mot. at 4 (emphasis in original).)

---

[3] Although the Receiver calculated a total net gain/profit of $13,011,856.05, (*see* ECF No. 67-2 ("Freitag Decl.") ¶ 46), the Receiver only seeks through this Motion to recover the $6,120,570.35 net gain/profit resulting from netting amounts received directly from and transferred directly to ANI Loan Program Participants. (*See id.*; *see also* Mem. at 21 n.8.) As the Receiver explains in the Motion, she

Defendants raise several arguments in opposition, (*see generally* Opp'n at 10–25), which the Court addresses in turn.

### A.     Existence of Net Losers

First, Defendants contend that the Receiver fails to make the threshold showing that "there still exist some net losers who are entitled to recover a sum certain from the net winners." (*See* Opp'n at 11–12; *see also generally id.* at 10–12.)  Based on records from which the Court may take judicial notice, the Receiver responds that "[t]his fact cannot be seriously disputed." (*See* Reply at 6.)  Specifically, the Receiver notes that there were $52,903,924.05 in allowed claims, (*see* 19-CV-1628 ECF No. 958), of which $39,485,725.85 have been paid, leaving $13,418,198.20 in unpaid, allowed investor and creditor claims. (*See* ECF No. 74-1 ("Freitag Reply Decl.") ¶ 4 & n.2.)

These figures are matters of public record in this receivership.  "The [SEC Action's] Findings can be relied on through judicial notice as the context for this lawsuit by the Receiver."  *See Klein v. Plaskolite, LLC*, No. 2:19-CV-00832-DN-PK, 2024 WL 2882593, at *17 (D. Utah June 7, 2024) (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)).  To the extent the Receiver seeks in excess of $13,418,198.20 through the instant Motion, the investor claims were limited to MIMO net losses, meaning investors could "submit supplemental claims for amounts previously excluded, such as interest, attorneys' fees, and costs." (*See* Reply at 7–8.)  Accordingly, the Court declines to deny the Receiver's Motion on the grounds that she has failed to demonstrate that there still exist "net losers" of the fraudulent scheme.

### B.     Statute of Limitations

Defendants also argue that the Receiver's first cause of action is barred to the extent she seeks to recover transfers made outside the four-year statute of limitations, Cal. Civ.

---

only seeks to recover $6.1 million because "the $6.9 million net gain includes a $5.4-million net gain from transfers between ANI License and CalPrivate, and . . . the Receiver is already pursuing the Note Claim and Guaranty Claim, which arise out of the nonpayment of the Loan that CalPrivate had advanced to ANI Licnse and from which the $5.4-million net gain is derived." (*See* Mem. at 22 n.8.)

Code §§ 3439.09(a), (b),[4] and the seven-year statute of repose, Cal. Civ. Code § 3439.09(c). (*See* Opp'n at 24–25.) The Receiver responds that "[a]ll of the transfers that make up the $6,120,570.35 in net profits Defendants received from the scheme occurred in June, July, and August 2019—well within four years of the filing of the original complaint on September 15, 2021." (*See* Reply at 8; *see also* Mem. at 27.) A review of the relevant transactions, *see infra* page 10, confirms that they were made between June 27, and August 16, 2019, well within the statute of limitations. The Court therefore declines to deny the Receiver's Motion based on Defendants' argument that the Receiver's CUVTA claim is time-barred.

### C.     *Prejudgment Interest*

Defendants assert that the Receiver has failed to show that she is entitled to prejudgment interest because she "offers no explanation of where the principal amounts or dates came from, or why they are the correct or appropriate basis for the calculation of prejudgment interest." (*See* Opp'n at 25.) The Receiver responds that her "request for prejudgment interest and calculation thereof is based on the dates and amounts of the final nine transfers that make up the net profit they received from the scheme, with 7% annual interest calculated from the date of each transfer." (*See* Reply at 9 (first citing Mem. at 27; then citing *Von Gunten v. Neilson (In re Slatkin)*, 243 F. App'x 255, 259 (9th Cir. 2007)).)

As Judge Burns previously explained:

> In cases seeking to recover fraudulent transfers received from Ponzi schemes, courts may, at their discretion, "permit the receiver to recover pre-judgment interest on the fraudulent transfers from the date each transfer was made." *Donell*, 533 F.3d at 772 (citations omitted). Prejudgment interest is an "ingredient of full compensation that corrects judgments for the time value of money." *Id.* (internal quotation marks and citation omitted). The court is

---

[4] An actual fraud claim must be filed "not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered by the claimant." Cal. Civ. Code § 3439.09(a). A constructive fraud claim is subject to the same statute of limitations without the additional one-year extension. *See* Cal. Civ. Code § 3439.09(b).

> bound by considerations of fairness in making its determination, and prejudgment interest should be awarded when it's necessary to make the wronged party whole. *See In re Acequia, Inc.*, 34 F.3d 800, 818 (9th Cir. 1994). In determining the amount of prejudgment interest awarded, California uses a seven percent per annum rate for fraudulent transfer cases. Cal. Const. art. XV, § 1; *see also* Default Judgment Order, *Levene Action* (Oct. 10, 2022), ECF No. 11 (granting seven percent prejudgment interest from date of last transfer to when order was issued).

*Valeiras*, 2024 WL 1355146 at *14. For the same reasons that Judge Burns awarded prejudgment interest in *Levene* and *Valeiras*, it would be equitable to award prejudgment interest in the event that the Court grants summary judgment in the Receiver's favor against Defendants here. *See infra* Section II.D.

### D. Joint Liability

Finally, and most importantly, the bulk of Defendants' arguments concern the Receiver's treatment of Defendants collectively as a net winner, as opposed to analyzing transfers as to each Defendant individually. (*See* Opp'n at 12–24.) Here, each of the transfers the Receiver seeks to recover were made to Kim Funding:

| Date | Amount | Transferor | Transferee | Citation |
|---|---|---|---|---|
| 8/16/2019 | $236,767.29 | Chicago Title | Kim Funding | ECF No. 67-6 at 36 |
| 8/7/2019 | $1,036,000.00 | Chicago Title | Kim Funding | ECF No. 67-6 at 36 |
| 8/2/2019 | $716,119.94 | Chicago Title | Kim Funding | ECF No. 67-6 at 36 |
| 7/26/2019 | $1,281,250.00 | Chicago Title | Kim Funding | ECF No. 67-6 at 36 |
| 7/16/2019 | $119,075.35 | Chicago Title | Kim Funding | ECF No. 67-6 at 36 |
| 7/15/2019 | $2,233,875.00 | Chicago Title | Kim Funding | ECF No. 67-6 at 36 |
| 7/11/2019 | $3,784.93 | ANI Development | Kim Funding | ECF No. 67-6 at 30 |
| 7/9/2019 | $302,826.36 | ANI Development | Kim Funding | ECF No. 67-6 at 30 |
| 6/27/2019 | $190,871.48[5] | Chicago Title | Kim Funding | ECF No. 67-6 at 36 |

---

[5] Although Chicago Title transferred $342,215.77 to Kim Funding on June 27, 2019, (*see* ECF No. 67-6 at 36), the Receiver only seeks to recover $190,871.48 of that transfer. (*See* Reply at 9 n.8.)

Defendants contend that, "[b]ased on the Receiver's admission that she has not performed a tracing analysis to determine whether one or more of the Defendants is an immediate or mediate transferee of any portion of Kim Funding's net gain, the Receiver has not met her burden to prove that she is entitled to a judgment for $6,120,570.35 against all of the Defendants." (*See* Opp'n at 13.)  The Receiver contends that "all Defendants should be held jointly liable on the Fraudulent-Transfer Claim in this case due to the manner in which (a) Peterson controlled and extensively and freely moved funds between and among all Defendants and (b) they haphazardly transacted with third parties, including the Receivership Entities, Chicago Title, and ANI Loan Program Participants." (*See* Mem. at 23.)  "Under these circumstances, a coherent tracing analysis identifying subsequent-transfer Defendants and the specific amounts each received is impracticable," (*see id.*), and "it would be grossly inequitable and unfair to the Participants who suffered losses from the scheme to allow Defendants to avoid collection entirely by leaving Kim Funding as a defunct, shell entity and arguing that, because of Defendants' own commingling and rapid churning of funds, there is insufficient tracing to show Peterson's other entities and trusts (which actually hold assets) benefited from the Ponzi-scheme net profits." (*See* Reply at 6.)

Although the Court agrees with the Receiver that "it would be grossly inequitable and unfair to the Participants who suffered losses from the scheme to allow Defendants to avoid collection entirely," (*see* Reply at 6), and it is undisputed that Defendants are largely (if not wholly) owned by Mr. Peterson's family and under his control,[6] the Court is troubled

---

[6]  For example, it is undisputed that Mr. Peterson, through Kim Funding, was business partners with Ms. Champion-Cain and acquired a 1% economic membership interest and 50% voting membership interest in ANI Development. (*See* Jt. Stmt. J-41.)  It is also undisputed that Kim Funding has always been wholly owned by Mr. Peterson's family and wholly controlled by Mr. Peterson. (*See id.* J-37, J-38, J-48–J-51.)  The remaining Defendants are also owned in large part by Mr. Peterson's family and under his control. (*See* J-37, J-38 (1992 Trust); J-39, J-40 (1983 Trust); J-48–J-51 (Kim Funding); J-56–J59, J-62 (ABC Funding); J-60, J-61 (ABC Management); J-65–J-68 (ANI License); J-71–J-73 (Kim Media); J-74, J-75 (Kim Management); J-76, J-77 (Kim Aviation); J-78, J-79 (Aero Drive); J-80, J-81 (Aero Drive Three); J-82, J-83 (Baltimore Drive); J-84, J-85 (George Palmer Corp.); J-86, J-87 (KF Pension Plan).)

by Defendants' contention that the theory of liability on which the Receiver seeks to recover at summary judgment does not appear in the operative Second Amended Complaint. (*See, e.g.*, Opp'n at 13–15; *see also* Tr. at 68:10–69:14.) Even construing the Second Amended Complaint with the utmost liberality, the Court is hard-pressed to locate allegations putting Defendants on notice of the Receiver's theory regarding "how extensively Defendants moved funds between themselves, such that fraudulent transfers seemingly received by any particular Defendant should be treated as having been received jointly by all Defendants." (*See* Mem. at 9.) The only real allegations concerning the fraudulent transfers received by "Defendants" provide that "Defendants received the transfers that make up the Profit Amount either as the initial transferee, immediate transferee, or mediate transferee," (*see* SAC ¶ 152), and:

> As a result of the Accounting, the Receiver discovered that Defendants, directly or indirectly, received payments in excess of amounts they transferred to Chicago Title escrow accounts, their investors, and the Receivership Entities. The total amount received by Defendants in excess of amounts they transferred to Chicago Title escrow accounts, their investors, and the Receivership Entities (the "Profit Amount") is $12,759,332. The transfers that make up the Profit Amount are listed out on **Exhibit O** hereto. Defendants did not provide any goods, services or other value to the Receivership Entities in exchange for the transfers that make up the Profit Amount.

(SAC ¶ 144 (emphasis in original).) The Second Amended Complaint does not cite to California Civil Code § 3439.08(b)(1)(A) or contain any allegations concerning "for whose benefit the transfer[s] w[ere] made," and Exhibit O does not include the intercompany transfers on which the Receiver ultimately relies to treat Defendants jointly liable. (*See* Mem. at 15–16, 20–26; *see also* ECF No. 51 at 163–206 ("Ex. O").)

"Where plaintiffs 'fail[] to raise [a claim] properly in their pleadings, . . . [if] they raised it in their motion for summary judgment, they should [be] allowed to incorporate it by amendment under Fed. R. Civ. P. 15(b)." *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (alterations in original) (quoting *Jackson v. Hayakawa*, 605 F.2d 1121, 1129 (9th Cir. 1979)). "Five factors are taken into account to assess the

propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Id.* (quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)). Because the Parties have not addressed whether the Receiver should be permitted to amend her Second Amended Complaint to conform to the proof submitted at summary judgment or the five factors articulated by the Ninth Circuit, the Court **DENIES WITHOUT PREJUDICE** the Receiver's Motion as to her first cause of action under CUVTA.

## II.  Breach of Contract – Promissory Note

The Receiver's seventh cause of action is for ANI License's breach of the ANI License/CalPrivate Note. (*See* SAC ¶¶ 192–97.) "A [claim] for nonpayment on a promissory note is one for breach of contract." *Poseidon Dev., Inc. v. Woodland Land Estates, LLC*, 152 Cal. App. 4th 1106, 1112 (2007). To prevail on such a claim under California law, a plaintiff must prove (a) the existence and terms of the contract (*i.e.*, the note), (b) plaintiff's performance (*e.g.*, disbursing the loan proceeds), (c) defendant's breach (*e.g.*, failing to make payments), and (d) damages therefrom (*e.g.*, receiving neither interest nor return of principal). *See Student Loan Mktg. Ass'n v. Hanes*, 181 F.R.D. 629, 633 (S.D. Cal. 1998) (citing *M.G. Chamberlain & Co. v. Simpson*, 173 Cal. App. 2d 263, 274 (1959)). ANI License does not contest liability, (*see generally* Opp'n; *see also* Reply at 10), or the Receiver's calculation of $2,454,919.87 for outstanding principal and $3,608,654.02 of unpaid accrued interest as of December 31, 2023. (*See generally* Opp'n; ECF No. 73-3 ("Objs.") at 3 (not objecting to Plaintiff's facts 17 and 18); *see also* Reply at 10–11.) The Court therefore **GRANTS IN PART** the Receiver's Motion as to her seventh cause of action and **ENTERS JUDGMENT** in favor of the Receiver and against ANI License in the amount of **$6,063,573.89**.

Nonetheless, while conceding that "CalPrivate would be entitled to recover the *reasonable* attorney's fees that CalPrivate paid 'to help collect th[e] Note,'" (*see* Opp'n at 26 (emphasis in original)), Defendant contests the Receiver's claim to $3,642,813.88 in

/ / /

attorneys' fees and costs as of December 31, 2023.[7] (*See id.* at 26–28.) Specifically, Defendants contend that "[t]he only evidence the Receiver offers to support her claim to these legal fees is a single sentence in the supporting Declaration of Karen Lister, and a schedule that purports to show payments made to attorneys on various matters," which "is not sufficient to show that *any* of these legal fees were reasonably incurred to collect the CalPrivate Note." (*See id.* at 26 (emphasis in original).) Further, "[t]he amount of the fee request is patently unreasonable." (*See id.* at 27.) In her Reply, the Receiver supplemented the record with "the invoices from the law firms retained by CalPrivate." (*See* Reply at 10.) In recognition that this submission was untimely, the Receiver indicated that she "would not oppose Defendants having the opportunity to file a sur-reply for the sole purpose of addressing these invoices." (*See id.* at 10 n.12.) In response, Defendants filed an Objection to New Evidence Offered by Receiver in Her Reply in Support of Her Motion for Summary Judgment ("Reply Obj.," ECF No. 76), arguing that "the Court should strike and ignore this new evidence and the arguments stemming from that evidence" because "it is improper to offer this evidence for the first time in the Reply." (*See id.* at 3 (citing *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 682 (S.D. Cal. 1999)); *see also id.* at 4–5.)

Even if the Court were inclined to accept the Receiver's untimely evidence as to the amount of attorneys' fees she seeks to recover, the Court concludes that her analysis is woefully deficient. "In computing attorney's fees pursuant to contract under California or federal law, courts follow the 'lodestar' approach." *Cataphora Inc. v. Parker*, 848 F. Supp. 2d 1064, 1069 (N.D. Cal. 2012) (citing *Signatures Network, Inc. v. Estefan*, No. C 03-4796 SBA(BZ), 2005 WL 151928 (N.D. Cal. Jan. 24, 2005); *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095, *as modified* (June 2, 2000)). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence . . . that

---

[7]  The Receiver originally sought $3,905,912.39, (*see* Mem. at 29), but reduced her request to $3,642,813.88 in her Reply upon further review, (*see* Reply at 11 & n.13), $519,313.05 of which is attributable to collecting on the Guaranty. (*See* ECF No. 74-2 ("Lister Reply Decl.") ¶ 4.)

the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Because the Receiver has failed to carry her burden, the Court **DENIES IN PART WITHOUT PREJUDICE** the Receiver's request for attorneys' fees in the amount of $3,642,813.88. *See, e.g.*, *MFY Funding, LLC v. Ohia Opportunities, LLC*, No. 21-CV-261-DKW-KJM, 2022 WL 16715682, at *6 (D. Haw. Nov. 4, 2022) (denying without prejudice at summary judgment request for attorneys' fees where the moving party "provide[d] no legal or factual justification for th[e requested] number or its purported reasonableness" and, "[a]mong other things, there [wa]s no information about [the movant]'s various attorney timekeepers or their respective billing rates, no description of each timekeeper's skill, experience or reputation, no description of what each timekeeper did, and no indication of the time spent performing each unidentified task"); *see also Clear Connection Corp. v. Comcast Cable Commc'ns Mgmt., LLC*, 501 F. Supp. 3d 886, 895 (E.D. Cal. 2020) (denying summary judgment on breach of contract and indemnification claims for failure to "establish[] damages as a matter of law" where the movant "ha[d] not produced any evidence, by affidavits from its attorneys or otherwise, as to how the attorneys' fees incurred in defendant itself in the [underlying] action [we]re reasonable").

### III. Breach of Contract – Guaranty

The Receiver's eighth cause of action is for the breach of the 1992 Trust/CalPrivate Guaranty by Mr. Peterson in his capacity as trustee of the 1992 Trust. (*See* SAC ¶¶ 198–203.) As with the Receiver's claim for nonpayment of the ANI License/CalPrivate Note, *see supra* Section II, "[a] breach-of-guaranty claim is a species of claims for breach of contract." *See Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1123 (C.D. Cal. 2015). Under California law, the Receiver must show that "(1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty." *See Gray1 CPB, LLC v. Kolokotronis*, 202 Cal. App. 4th 480, 486 (2011). Again, Defendants do not contest liability or the Receiver's calculation of outstanding

principal and unpaid accrued interest as of December 31, 2023, (*see generally* Opp'n at 28–30; *see also* Reply at 10), although they contend that the Receiver's recovery should be limited to the 1992 Trust's 20% proportionate share of the debt given that there are five guarantors. (*See* Opp'n at 28–30.)

As an initial matter, the Court notes that Defendants never pleaded contribution as an affirmative defense or as a counterclaim in either of their Answers. (*See generally* ECF Nos. 41 (Answer to FAC), 54 (Answer to SAC).) Although generally "a party cannot raise a defense not at issue in its pleadings in order to oppose summary judgment," *Hollyway Cleaners & Laundry Co. v. Cent. Nat'l Ins. Co. of Omaha, Inc.*, 219 F. Supp. 3d 996, 1004 (C.D. Cal. 2016) (citing *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991–92 (9th Cir. 2006)), "defendants may raise an affirmative defense for the first time in a motion for summary judgment . . . if the delay does not prejudice the plaintiff." *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1087 (9th Cir. 2017) (quoting *Magana v. Commonwealth of N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997)). Because the Receiver does not oppose Defendants untimely assertion of a contribution defense, the Court would be hard-pressed to conclude that she has been prejudiced. In any event, the Parties appear to have addressed the issue in *CalPrivate Bank v. Peterson et al.*, No. 37-2022-00035215-CU-BC-CTL (Cal. Super. filed Aug. 29, 2022). (*See* 19-CV-1628 ECF No. 1051.)

Defendants' argument fares no better on the merits—Defendants did not dispute that the Receiver paid CalPrivate $10,020,080.13 for its claims arising from the ANI License/CalPrivate Note and 1992 Trust/CalPrivate Guaranty, (*see* Jt. Stmt. J-182, J-183), which exceeds ANI Development's 20% share of the guarantors' obligations on the $12,500,000 loan. (*See* ECF No. 67-6 at 442; *see also* ECF No. 73-1 ("Peterson Decl.") ¶ 3.) Consequently, for the same reason the Court denied Mr. Peterson's Motion for Leave to File Cross-Complaint Against the Receiver in the SEC Action, (*see* 19-CV-1628 ECF No. 1051 at 10), the Court rejects Defendants' argument that the Receiver's recovery on her eighth cause of action should be limited to 20% or 40% of the unpaid principal and

interest on the ANI License/CalPrivate Note. The Court therefore **GRANTS IN PART** the Receiver's Motion as to her eighth cause of action and **ENTERS JUDGMENT** in favor of the Receiver and against Mr. Peterson as trustee of the 1992 Trust in the amount of **$6,063,573.89**.[8]  As discussed above, *see supra* Section II, at this time the Court **DENIES IN PART WITHOUT PREJUDICE** the Receiver's request for the $519,313.05 in attorneys' fees she attributes to the enforcement of the Guaranty against the 1992 Trust.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE** the Receiver's Motion for Summary Judgment (ECF No. 67). Specifically, the Court **GRANTS** summary judgment in favor the Receiver and against ANI License and the 1992 Trust, jointly and severally, in the amount of **$6,063,573.89**, representing the outstanding principal and unpaid accrued interest on the ANI License/CalPrivate Note and 1992 Trust/CalPrivate Guaranty as of December 31, 2023. The Receiver's Motion is otherwise **DENIED WITHOUT PREJUDICE**. To the extent the Receiver wishes further to pursue her first cause of action under CUVTA and/or her requests for reasonable attorneys' fees incurred to collect the ANI License/CalPrivate Note and 1992 Trust/CalPrivate Guaranty, she **MAY FILE** a supplemental brief, not to exceed twenty-five (25) pages, addressing the deficiencies identified herein within twenty-one (21) days of the electronic docketing of this Order. In the event that the Receiver files a supplemental brief, Defendants **MAY FILE** a responsive brief, not to exceed twenty-five

/ / /

/ / /

---

[8] At the hearing, the Court expressed its concerns regarding the potential for double recovery against Mr. Peterson and the 1992 Trust in light of the parallel proceedings in this Court and state court. (*See* Tr. at 72:13–73:1); *see also, e.g.*, *Bank of Am., N.A. v. Stonehaven Manor, LLC*, 186 Cal. App. 4th 719, 725 (2010) ("Of course, [the plaintiff] may not obtain double recovery; it may obtain only what it is owed on the debt (plus related costs)." (citing *Walter E. Heller W., Inc. v. Bloxham*, 176 Cal. App. 3d 266, 274 (1985))). The Receiver's counsel explicitly noted on the record that she "would not seek a double recovery in state court against Mr. Peterson." (*See* Tr. at 74:12–13.)

(25) pages, within forty-two (42) days of the electronic docketing of this Order. *No further briefing will be accepted without leave of the Court.*

**IT IS SO ORDERED.**

Dated: January 8, 2025

_____
Honorable Todd W. Robinson
United States District Judge